1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF MISSISSIPPI

3
UNITED STATES OF AMERICA,        )
4                                )
        Plaintiff,               )        CASE NO. 1:15CR098
5                                )
        VS.                      )
6                                )
MUHAMMAD ODA DAKHLALLA,          )
7                                )
        Defendant.               )
8    _____

9

10    CHANGE OF PLEA AS TO COUNT 1 OF THE INDICTMENT
        BEFORE CHIEF DISTRICT JUDGE SHARION AYCOCK
11        FRIDAY, MARCH 11, 2016; 11:30 A.M.
                ABERDEEN, MISSISSIPPI
12
    FOR THE GOVERNMENT:
13
        United States Attorney's Office
14      CLAY JOYNER, ESQ.
        BOB NORMAN, ESQ.
15      900 Jefferson Avenue
        Oxford, Mississippi  38655-3608
16

17  FOR THE DEFENDANT:

18      Federal Public Defender's Office
        GREGORY SCOTT PARK, ESQ.
19      1200 Jefferson Avenue, Suite 100
        Oxford, Mississippi 38655
20

21
        Proceedings recorded by mechanical stenography, transcript
22  produced by computer.

23  _____

        RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
24        FEDERAL OFFICIAL COURT REPORTER
            911 JACKSON AVENUE EAST, SUITE 369
25            OXFORD, MISSISSIPPI  38655

```
1        (CALL TO ORDER OF THE COURT)

2            THE COURT:  Good morning, everyone.  Okay.

3  Counselors, if you'll come forward, please.

4        (Parties complying).

5            THE COURT:  You may call the case.

6            THE COURTROOM DEPUTY:  Court calls case No. 1:15CR98,

7  United States of America v. Muhammad Oda Dakhlalla for change

8  of plea hearing.

9            THE COURT:  Thank you.

10        Representing the Government this morning is Clay Joyner,

11  Assistant United States Attorney.  I also note that Mr. Bob

12  Norman is in the courtroom with the Government.  Greg Park

13  represents the defendant, with George Lucas seated at counsel

14  table.

15        There are some FBI agents in the courtroom, Steve

16  Thomason, Todd Bobee and Gilbert Surle.  So those agents are

17  here with us today too.  Kimberlee Hatter is our probation

18  officer, and she is in the courtroom.

19        Now, Mr. Dakhlalla, I am told that you are here to enter a

20  plea to Count 1, which is that you did knowingly combine,

21  conspire, confederate, agree together with each other to

22  provide material support or resources, as that term is defined

23  in Title 18, United States Code, Section 2339(a)(B), including

24  personnel, to a Foreign Terrorist Organization, namely, the

25  Islamic State of Iraq.  Do you intend to enter a plea this
```

1  morning to that charge?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Would you raise your right hand to be

4  sworn, please.

5       (OATH ADMINISTERED BY THE COURTROOM DEPUTY).

6            THE COURT:  Thank you.  Now, do you understand, sir,

7  that you have been sworn; you're under oath; so any answers

8  that you give to the Court that are not true can later be used

9  against you in a charge for perjury?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  And do you understand that you have the

12 right to remain silent and not answer any questions in this

13 proceeding?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Now, I have just asked you about your

16 intent to enter a plea.  You've indicated to me your intent to

17 enter a plea this morning to Count 1.  You've also evidenced

18 that by signing a plea agreement and a plea supplement.

19      Later in the proceeding, I will ask you some questions

20 about your understanding of the content of those agreements.

21 But, first, I want to make sure that you understand some

22 general questions and have some general understanding of what

23 we're doing.

24      So I'm going to ask you some questions; and, if I ask you

25 a question that you don't understand, please don't answer it;

1    ask Mr. Park to explain it to you, or ask the Court to explain

2    it before you answer.  Okay?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Let's start by asking you, if you would,

5    please, sir, state your name and your age.

6              THE DEFENDANT:  My name is Muhammad Oda Dakhlalla,

7    and I'm 23 years old.

8              THE COURT:  And, for the Court's understanding, how

9    long have you been in custody?

10             THE DEFENDANT:  Seven months.

11             THE COURT:  Okay.  Are you presently under the

12   influence of any drugs, alcohol, or anything that would impair

13   your understanding of this event?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  And tell me -- what is the level of your

16   education?

17             THE DEFENDANT:  A bachelor's degree, Your Honor.

18             THE COURT:  Okay.  Do you suffer from any mental

19   illnesses or psychiatric illnesses?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Have you ever been treated for any drug

22   addiction?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Have you ever been treated for any mental

25   illnesses?

1              THE DEFENDANT:  No, Your Honor.

2              THE COURT:  Mr. Park, do you have any reason to

3  question the competency of your client for purposes of entering

4  the plea?

5              MR. PARK:  I do not, Your Honor.

6              THE COURT:  Thank you.

7         Now, Mr. Dakhlalla, I want to ask you some questions.  Do

8  you understand that you have the right to continue to maintain

9  your innocence and to go to trial on this case?  In other

10 words, you're not required to enter a plea today.  Do you

11 understand?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And you have -- have you had ample

14 opportunity to discuss, with Mr. Park, your decision to enter

15 this plea today?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Are you satisfied with the legal counsel

18 that Mr. Park has given you in this case?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And do you believe that he has

21 represented your best interests in representing you in this

22 matter?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Do you understand that, under the

25 Constitution and the laws of the United States, that you are

1    entitled to a speedy and public trial of this charge?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  Do you understand that if you could not

4    afford to hire an attorney that one would be appointed to

5    represent you at every critical stage of the proceedings?

6         THE DEFENDANT:  Yes, Your Honor.

7         THE COURT:  And do you also understand that if you

8    elected to go to trial that you would be presumed innocent; it

9    would be the Government's burden to prove you guilty beyond a

10   reasonable doubt; it would not be your burden to prove your

11   innocence?  Do you understand?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  And do you understand further that, in

14   the course of that trial, the Government, likely, in a trial,

15   would produce documents, as well as witnesses, in proof against

16   you in -- this proof of this charge.  Your attorney would have

17   the right to cross-examine the state's witnesses.

18     Further, you would have the right to present a defense;

19   your attorney would have the right to call witnesses if they

20   desire to do so, subject to cross-examination by the

21   Government.

22     So it's in this way that a jury would hear the admissible

23   proof in the trial and make a decision about your guilt or your

24   innocence.  Do you understand that process?

25        THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And, understanding it, do you understand

2     that, if you had a trial, that you would have the right to take

3     the stand and testify in your own defense?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And do you understand that if you elected

6     not to testify that the Court would advise the jury that you

7     have the constitutional right to remain silent and not testify?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you understand that if you went to

10    trial that you would have the right to compel, or have your

11    lawyer subpoena, witnesses to testify in your behalf?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Now, if you went to trial and you were

14    convicted, do you understand that I would sentence you based

15    upon the conviction?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  And do you understand that if you went to

18    trial and you were convicted and I sentenced you, that you

19    would have the right to appeal both the conviction and the

20    sentence to an appellate court?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Now, if you offer your plea here today

23    and I accept it today, do you understand that today I will

24    adjudicate you guilty of this charge?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You will be sentenced at a later date,

2   but I will accept your plea and adjudicate you guilty today.

3          THE DEFENDANT:  Uh-huh.

4          THE COURT:  Sir, do you understand that, in doing so,

5   you will have waived your right to a jury trial?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Now, I've talked to you about several

8   matters.  Have you understood my questions?

9          THE DEFENDANT:  Uh-huh, yes, Your Honor.

10         THE COURT:  And did Mr. Park speak with you about

11  these constitutional rights that you would be waiving by

12  entering this plea?  Did he talk to you prior to today?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you understand?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And understanding, do you still wish to

17  go forward and enter your plea to Count 1 of the indictment?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Now, I've indicated to you that this

20  charge is one that you did combine, conspire, confederate, and

21  agree together and with each other to provide material support

22  or resources, as that term is defined by the United States

23  Code, including personnel, to a Foreign Terrorist Organization,

24  namely Islamic State of Iraq and ISIL.  Do you understand that

25  charge?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Mr. Park, do you waive the formal reading

3 of the indictment?

4        MR. PARK:  We do, Your Honor.

5        THE COURT:  In order for the Government to convict

6 you of this charge, the Government would have to prove certain

7 elements of the offense.  And I'm going to ask Mr. Joyner to

8 advise you of those elements at this time.

9        MR. JOYNER:  Certainly, Your Honor.  First, beginning

10 on or about May 1st, 2015, and continuing up to and including

11 on or about August 8th, 2015, there was an agreement between

12 two or more persons to provide material support or resources to

13 a designated Foreign Terrorist Organization.

14     Second, that the defendant became a member of the

15 conspiracy knowing of its object and intending to help

16 accomplish it.

17     Third, the defendant knew that -- and the term *ISIL* is

18 what's used in the elements, Your Honor -- the Islamic State of

19 Iraq and the Levant was a designated Foreign Terrorist

20 Organization or had engaged, or was engaging in, terrorist

21 activity or terrorism.

22     And, fourth, the defendant was a national or lawfully

23 admitted permanent residence of the United States or the

24 offense occurred in whole, or in part, in the United States.

25     And, here, the Government has alleged that the material

1   support or resources included personnel including the defendant

2   himself.  The term *personnel* means one or more persons, which

3   can include the defendant's own person.

4        However, no person can be convicted for a violation of

5   this statute in connection with providing personnel unless that

6   person has knowingly conspired to provide a Foreign Terrorist

7   Organization with one or more individuals, who may include the

8   defendant, to work under that terrorist organization's

9   direction or control.

10         THE COURT:  Did you understand everything that he

11   read?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you represent to the Court that you

14   understand those four elements?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  At this time, I'm going to advise you of

17   the penalties that apply to this count; and it is a term of

18   imprisonment of not more than 20 years, up to lifetime on

19   supervised release, not more than a $250,000 fine; and carries

20   with it a $100 special assessment.  Do you understand the

21   penalties?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And do you understand that you can be

24   ordered to pay restitution at sentencing?  At the present time,

25   I know of no reason to think that you would be obligated to pay

1   restitution; but, if it is determined that restitution is owed,

2   do you understand that it can be ordered?

3              THE DEFENDANT:  Restitution?

4        (Off-the-record discussion).

5              THE DEFENDANT:  Oh, yes, Your Honor.

6              THE COURT:  And, if you're ordered to serve a term in

7   prison, do you understand that it will be followed by a term of

8   supervised release?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  And, if you're on supervised release and

11  you violate a term or a condition of your supervised release,

12  do you understand that you can be revoked and sent back to

13  prison?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  So, Mr. Dakhlalla, do you understand all

16  the penalties that I've just described to you?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Thank you.  I'd like for you to turn to

19  the plea agreement that you have signed and ask you, first, to

20  look at the last page.  Would you please, sir, affirm for the

21  record that that's your signature?

22             THE DEFENDANT:  It is, Your Honor.

23             THE COURT:  This document is dated March 9th, 2016;

24  has been signed by you and your attorney and representative --

25  excuse me -- the United States Attorney.  It's very important

1 that you understand that this is essentially your contract with

2 the Government, so I'm going to ask Mr. Joyner to read this

3 into the record.  Let me ask you this, sir; prior to signing,

4 did you read the document?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And you conferred with Mr. Park about any

7 questions that you had about the document and its contents,

8 correct?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Thank you.

11     Mr. Joyner.

12          MR. JOYNER:  Your Honor, if I may, for the record,

13 has he confirmed his signature on the supplement as well?

14          THE COURT:  No.

15          MR. PARK:  He'll do that shortly.

16          MR. JOYNER:  All right.  So, Your Honor, that

17 agreement is as follows:  Of course, the defendant agrees to

18 plead guilty under oath to Count 1 of the indictment as the

19 Court has described it to him and with the appurtenant

20 penalties to that charge.

21     Further, the United States agrees not to charge the

22 defendant with any other offenses arising from, or relating to,

23 the above charge and agrees to dismiss all other counts of the

24 indictment as to this defendant upon conclusion of sentencing

25 on Count 1.

1        Further, this agreement does not bind any prosecuting

2   authority of any state or any other federal district; nor does

3   it bind the Attorney General of the United States with regard

4   to any matter, criminal or civil, involving federal tax laws;

5   nor does this agreement bind the United States, or any of its

6   departments or agencies, with regard to any civil or

7   administrative actions or remedies.

8        Further, the defendant agrees with the application of the

9   United States Sentencing Guideline Section 3A1.4(a), the

10  terrorism adjustment, which increases his offense level by 12

11  levels and his criminal history category to VI.  The Government

12  concurs that the terrorism adjustment should apply to this

13  defendant's case.

14       If the defendant violates this agreement, all statements

15  made pursuant to it would be admissible against him; and he

16  hereby waives the provisions of Rule 11(f) of the Federal Rules

17  of Criminal Procedure and Rule 410 of the Federal Rules of

18  Evidence.  The defendant may also, in that event, be prosecuted

19  for all federal offenses, including perjury and false

20  statements relating to this plea agreement.

21       And, apart from being advised of the applicability of the

22  United States Sentencing Guidelines, and other than as set

23  forth elsewhere in the plea documents, no promise or

24  representation whatsoever has been made to the defendant as to

25  what punishment the Court might impose if the Court accepts the

1   plea of guilty.

2       This agreement fully reflects all promises, agreements,

3   and understandings between the defendant and the United States

4   Attorney.  The defendant's agreement is knowing, free, and

5   voluntary and not the product of force, threat, or coercion.

6   The defendant is pleading guilty because the defendant is in

7   fact guilty, Your Honor.

8           THE COURT:  Okay.

9       Mr. Dakhlalla, did you understand everything that Mr.

10  Joyner read?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Now, I want you to turn your attention to

13  the plea supplement.  And if you would, look at the last page

14  for me.  Is that your signature?

15          THE DEFENDANT:  It is, Your Honor.

16          THE COURT:  Same date with the same parties signing.

17  Sir, this document is filed under seal; so I'm not going to ask

18  it to be read aloud as I did the plea agreement.  There's a

19  couple of provisions that I want to bring to your attention and

20  ask Mr. Park to point out to you again in this proceeding and

21  make sure that you represent to me that you understand them and

22  you're agreeing to them.  Okay?

23          THE DEFENDANT:  Uh-huh.

24          THE COURT:  Mr. Park, would you show him, on page

25  4 -- excuse me -- 5, the waive provisions.

1          MR. PARK:  Your Honor, I have reviewed those relevant

2 paragraphs with Mr. Dakhlalla; and he has confirmed to me that

3 he understands the terms of the plea supplement in regard to

4 the waivers.

5          THE COURT:  Thank you.

6     And you do, sir?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Now, Mr. Park, would you point out to him

9 on page 5, Paragraph 5, which deals with a recommendation

10 regarding a sentence?

11          MR. PARK:  Your Honor, Mr. Dakhlalla represents to me

12 that he does understand the provisions of Paragraph 5 on page

13 5.

14          THE COURT:  So, sir, do you have any questions about

15 the plea supplement?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  And, likewise, as you did with the plea

18 agreement, did you read the content of the plea supplement and

19 speak with Mr. Park about any questions that you had regarding

20 the supplement before signing?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  So, Mr. Park, did you have a conversation

23 with your client regarding the content and the agreements of

24 the plea agreement, as well as the plea supplement?

25          MR. PARK:  Your Honor, Mr. Dakhlalla and I have

1  discussed both documents.  I would note, just in terms of

2  directly answering your question, that Mr. Lucas in our office

3  actually met with Mr. Dakhlalla immediately prior to signing

4  it; and I would have confirmed with Mr. Lucas and Mr. Dakhlalla

5  that they both have reviewed the document.

6       I've also spoken with Mr. Dakhlalla since then, and I have

7  no reservations about his understanding of the plea agreement

8  and plea supplement.

9            THE COURT:  You agree with everything that Mr. Park

10 has just stated relative to your conversations with Mr. Lucas

11 and signing and having that explained to you by Mr. Lucas, as

12 well as Mr. Park?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Thank you.

15      Now, did you, Mr. Park, or Mr. Lucas, review the discovery

16 and any facts of the case that you had with your client?

17           MR. PARK:  Your Honor, I have reviewed all discovery

18 with Mr. Dakhlalla and discussed the sentencing guidelines and

19 the case in general.

20           THE COURT:  And do you agree that your client is

21 entering a plea freely, knowingly, and voluntarily?

22           MR. PARK:  I do, Your Honor.

23           THE COURT:  And do you believe that he understands

24 the charge and the consequences of entering this plea?

25           MR. PARK:  I do, Your Honor.

1          THE COURT:  Have any -- Mr. Dakhlalla, have any

2    promises been made to you about what your sentence will be in

3    this case, other than what is represented in the plea

4    supplement?

5          MR. PARK:  Has anybody promised you what your

6    sentence will be?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.

9          MR. PARK:  In -- in terms of that -- and listen to

10   Her Honor's question again.  She mentioned the plea supplement.

11   Other than what's in that plea supplement, has anybody told you

12   what your sentence is going to be?

13         THE DEFENDANT:  Oh, no, Your Honor.

14         THE COURT:  Thank you.  And you understand we're

15   talking about what is in the plea supplement that Mr. Park

16   showed you.  I just want to make sure that you have no other

17   promises other than what's in the plea supplement.

18         THE DEFENDANT:  Oh, okay.

19         THE COURT:  Is that a fair statement?

20         THE DEFENDANT:  Understood, Your Honor.

21         THE COURT:  Thank you.  And do you understand that by

22   entering this plea of guilty that you will also be waiving

23   certain valuable civil rights, including your right to serve on

24   a jury, your right to hold public office, your right to carry a

25   firearm or own a firearm, and your right to vote?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Thank you.  Now, I want to talk to you a

3   minute about sentencing and the guidelines, the sentencing

4   guidelines.  Has Mr. Park had a conversation with you, perhaps

5   even Mr. Lucas had a conversation with you, about the

6   sentencing guidelines?

7          THE DEFENDANT:  Yes, he has, Your Honor.

8          THE COURT:  And we know that there is a

9   representation in Paragraph 5, page 5 of the plea supplement.

10  But should the Court not accept that plea recommendation, then,

11  obviously, the Court would look to sentencing guidelines for

12  guidance.  Do you understand?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  So, if that were the case, do you

15  understand that those guidelines are advisory only; they're not

16  mandatory on the Court?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  And do you understand that this Court

19  could impose a sentence that is more severe or less severe than

20  called for by the guidelines?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  There are certain waiver provisions in

23  your plea supplement; but do you understand, sir, that, in

24  limited circumstances, you may have the right to appeal this

25  case?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And do you understand that the Government

3 preserves its right to appeal the case?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Or to appeal the sentencing in the case.

6 And I should make that very clear, to appeal the sentencing in

7 the case.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Okay.  Now, there's a factual basis.

10 It's before you.  Mr. Park has a copy.  And this is very

11 important.  These are the facts that the Government contends

12 that had this case gone to trial the Government would have been

13 prepared to prove against you beyond a reasonable doubt.

14 Obviously, your case is not going to trial because you're

15 entering a plea here today.

16          THE DEFENDANT:  Uh-huh. *

17          THE COURT:  But these facts could impact your

18 sentencing.  So I want to make sure that they're true and

19 accurate.  So Mr. Joyner is going to read them aloud; and, if

20 there's anything that we need to correct for the record, I'd

21 like for it to be brought to my attention.  Okay?

22          THE DEFENDANT:  Uh-huh.

23          THE COURT:  Mr. Joyner.

24          MR. JOYNER:  Thank you, Your Honor.  Were this case

25 to proceed to trial, the Government would prove, via expert and

1   lay witness testimony, as well as documentary, electronic, and

2   physical evidence, the following:  On October 15th, 2004, the

3   United States Secretary of State designated Al-Qa'ida in Iraq,

4   AQI, then known as Jam' at al Tawhid wa'al-Jihad as a Foreign

5   Terrorist Organization, that is, FTO, under Section 219 of the

6   Immigration and Nationality Act and as a Specially Designated

7   Global Terrorist entity under Section 1(b) of Executive Order

8   13224.

9        On May 15, 2014, the Secretary of State amended that

10  designation of Al-Qa'ida in Iraq as a Foreign Terrorist

11  Organization under Section 219 of the Immigration and

12  Nationality Act and as a Specially Designated Global Terrorist

13  entity under Section 1(b) of Executive Order 13224 to add the

14  alias Islamic State of Iraq and the Levant, or ISIL, as its

15  primary name.

16       The Secretary also added the following aliases to the

17  designation:  "The Islamic State of Iraq and al-Sham," "the

18  Islamic State of Iraq and Syria," "ad-Dawla al-Islamiyya fi

19  al-'Iraq wash-Sham," or "Dawlah"; "Daesh"; "Dawla al Islamiya";

20  and "Al-Furqan Establishment for Media Production."

21       Although the group has never called itself Al-Qaeda in

22  Iraq, this names has frequently been used to describe it during

23  its history.  I will use ISIL for the sake of simplicity in

24  this factual basis.

25       The Government would prove that Muhammad Oda Dakhlalla

1  conspired with Jaelyn Delshaun Young to join ISIL and provide

2  material support to it in the form of personnel while knowing

3  it was a Foreign Terrorist Organization that had engaged in

4  terrorist acts.

5      Mr. Dakhlalla, a United States citizen, first met Jaelyn

6  Young in the spring of 2014 in Starkville, Mississippi, where

7  they resided, and began dating her in November of 2014.

8  Ms. Young had expressed an interest in converting to Islam

9  before she started dating Mr. Dakhlalla; and she announced, in

10  March 2015, that she had converted to Islam.

11      Soon thereafter, Ms. Young explained to Dakhlalla that she

12  wanted to start covering her face; and, by the summer, she

13  began wearing a burkha at times.  After her conversion, Ms.

14  Young distanced herself from family and friends and felt

15  spending time with non-Muslims would be a bad influence.

16      Mr. Dakhlalla taught Ms. Young how to pray and to recite

17  the Quran in Arabic, and Ms. Young began watching YouTube

18  videos about Islamic law.  Ms. Young began to complain to

19  Dakhlalla about the treatment of Muslims by the United States

20  and Britain.

21      Ms. Young continued to watch pro-ISIL videos, including

22  the radical views of Anjem Choudry, and to show these to

23  Dakhlalla, and seemed to be developing hatred for people she

24  deemed immoral.

25      For instance, she viewed, and shared with Dakhlalla, a

1  video of a man accused of being a homosexual being thrown from

2  the roof of a building to his death below by ISIL; and she

3  expressed support for that.

4       After watching pro-ISIL videos on a regular basis,

5  Dakhlalla and Young felt that the U.S. media was presenting a

6  biased picture and refusing to acknowledge the good that

7  Mr. Dakhlalla and Ms. Young felt that ISIL was doing in some

8  parts of the world.

9       Dakhlalla and Young were bothered greatly by the coverage

10 of ISIL in the Western media in light of the fact that the

11 couple viewed ISIL as liberators of certain areas of Syria and

12 Iraq.

13      Beginning in the early summer of 2015, Ms. Young

14 continually asked Mr. Dakhlalla when they were going to join

15 ISIL and began to express hatred for the United States

16 Government and to express support for the imposition of Sharia

17 law in the United States.

18      In May 2015, the FBI identified the Twitter profile that

19 appeared to be supportive of ISIL and expressed a desire to

20 travel to ISIL-controlled territory.  The Twitter user was

21 identified as Ms. Young, and the FBI engaged in subsequent

22 undercover interactions with Ms. Young on internet and social

23 media platforms.

24      During these interactions, Ms. Young announced that she

25 was preparing for "hijjrah," which is a reference to journeying

1  to the Islamic State, and further stated "I have a 'hijjrah'

2  partner; and we're planning to leave before August."  That was

3  a quote, I apologize.  And that "We just have to be careful

4  because the NSA is launching new investigation programs, and I

5  don't want to be trapped here:(."

6       Young then added that her travel partner was a brother,

7  and that she would have to have "nikkah" -- and that is an

8  Islamic marriage -- with him so that they could travel together

9  without an escort.  The partner was eventually discovered to be

10  Mr. Dakhlalla.

11       In an interaction on June 1st, 2015, Ms. Young stated to

12  the FBI undercover "I need help crossing from Turkey to Syria

13  with my 'hijjrah' partner."  Ms. Young also expressed a

14  readiness to swear allegiance to, and join, the Islamic State,

15  stating "Alhamdulillah -- which, essentially, means god be

16  praised -- we know this is the true Khalifa."

17       Ms. Young then discussed what skills she and her partner

18  possessed that would be useful and explained that they were

19  fast learners and offered to provide medical assistance to the

20  wounded.

21       Ms. Young also informed the FBI employee that Dakhlalla

22  would like to help with the media operation to correct the

23  falsehoods being spread by the Western media; and that then he

24  would become a "mujahidin," which, essentially, translates to

25  holy warrior.

1      Mr. Dakhlalla, in contacts with the FBI employee, stated,

2  "I am good with computers, education, and media.  What could I

3  contribute to Dawlah?  In sha Allah."  With "in sha Allah"

4  translating, roughly, to god is willing.

5      He went on to explain that he and Young would soon have

6  "nikkah" -- and there was a ceremony; but, as Mr. Dakhlalla

7  acknowledges, it is not a legally recognized marriage -- and

8  exhibited an understanding that he would be taking orders from

9  ISIL when he arrived in their territory.

10      Mr. Dakhlalla and Ms. Young maintained contact with who

11 they thought were ISIL recruiters and continued to express

12 concerns about being caught by United States or Turkish

13 authorities; and explained the initial plan of traveling first

14 to Greece, posing as honeymooners; then going to Turkey and on

15 to Dawlah.  And, if I could, Dawlah is a term that basically

16 refers to territory controlled by the Islamic State of Iraq and

17 the Levant.

18      Dakhlalla inquired about training in Sharia law and said

19 that, if their passports did not arrive in time, they would

20 spend Eid -- which is a very important Muslim holiday -- with

21 their families "since it will be our last with them."

22 Mr. Dakhlalla made a payment for the purpose of expediting his

23 and Young's passport applications and speeding their trip to

24 join ISIL.

25      July 12th, 2015, Mr. Dakhlalla told the FBI employee, "I

1  wanted to ask about the military experience there.  Will I be

2  with people that speak English as well, or do they put me with

3  everyone at basic training?  I'm excited about coming to

4  Dawlah, but I feel I won't know what all I will be doing."

5        Dakhlalla, the next day, informed the FBI employee that he

6  wanted to become a "mujahid" and learn "what it really means to

7  have that heart in battle."  Mr. Dakhlalla assumed that he

8  would go to a military training camp when they arrived in

9  Syria.

10       Later in July, Ms. Young posted a message praising the

11 attack on U.S. military personnel in Chattanooga, Tennessee,

12 while, at the same time, continuing her complaints about the

13 passports of the couple being delayed.

14       Mr. Dakhlalla and Ms. Young expressed relief when the

15 passports arrived.  They made a plan to meet their "contact" in

16 Istanbul, Turkey, on or about August 10, 2015, and described

17 the clothes that they would be wearing.

18       The duo bought plane tickets to Istanbul, Turkey, to meet

19 their "contact" and then be taken to Syria.  They were arrested

20 on August the 8th, 2015, at the Golden Triangle Airport in

21 Columbus, Mississippi, attempting to board a flight for the

22 first leg of their journey to Turkey.

23       Mr. Dakhlalla was Mirandized by FBI Special Agent Steven

24 E. Thomason and confessed the plan to travel to Turkey in order

25 to join ISIL.  He and Ms. Young also left behind incriminating

1 farewell letters that explained that they would never be back

2 in the United States, with Ms. Young acknowledging her role as

3 the planner of the expedition and explaining that Mr. Dakhlalla

4 was going as her companion of his own free will.

5     And the Government would further ask, for the purposes of

6 this hearing, Your Honor, that the Court take judicial notice

7 that Starkville, Oktibbeha County, Mississippi, and Columbus in

8 Lowndes County, Mississippi, are within the Northern Federal

9 Judicial District of Mississippi.

10     THE COURT:  Mr. Dakhlalla, did you understand

11 everything that the prosecutor stated?

12     THE DEFENDANT:  Yes, Your Honor.

13     THE COURT:  And is everything that the prosecutor

14 stated about you and your conduct true and correct?

15     (Off-the-record discussion).

16     MR. PARK:  Your Honor, Mr. Dakhlalla had a quick

17 question; but it's something that was readily explainable.

18 And, based on my understanding -- could I ask the Court to ask

19 him the question again, please?

20     THE COURT:  Certainly.  So is everything that the

21 prosecutor stated about you that's contained in that factual

22 basis true and correct?

23     THE DEFENDANT:  Yes, Your Honor.

24     THE COURT:  And are you voluntarily entering this

25 plea of guilty on your own free will, admitting that you are in

1 fact guilty of the conduct described in the factual basis?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Now, I am about to ask you for your plea

4 in this case; but, before I do so, I want to go back and ask,

5 is there any question that I've asked you this morning that

6 needs to be revisited before I ask you for your plea?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Has anyone tried to coerce you, threaten

9 you, or promise you something in exchange for this plea?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  In this cause number, Cause No. 1:15CR98,

12 sir, do you plead guilty or not guilty to Count 1 of the

13 indictment?

14          THE DEFENDANT:  I plead guilty, Your Honor.

15          THE COURT:  It is the finding of the Court in the

16 this case that the defendant is fully competent and capable of

17 entering an informed plea; that the defendant is aware of the

18 nature of the charge and the consequences of the plea; and that

19 the plea of guilty is a knowing and voluntary plea supported by

20 an independent basis in fact containing each of the essential

21 elements of the offense.

22      Further, the Court finds that your plea is not a result of

23 force, threats, or promises.  Therefore, the plea is accepted.

24 I now adjudicate you guilty of Count 1 of the indictment.

25      Sir, a Presentence Report will be prepared by probation.

1  Probation will send that Presentence Report to the Government

2  and to your attorney.  Mr. Park, or Mr. Lucas, will sit down

3  and discuss with you the content of the Presentence Report.

4      You'll reserve the right to file objections to any of the

5  findings in the Presentence Report.  And, certainly, you'll

6  reserve the right to speak at sentencing.  Do you have any

7  questions?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Have you understood this proceeding?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Does the Government desire the filing of

12  the plea agreement and the plea supplement?

13         MR. JOYNER:  We certainly do, Your Honor.

14         THE COURT:  And it shall be filed.  Counselors, I'll

15  ask Ms. Ginger to get with you and for a sentencing order to be

16  entered after today regarding the date of sentencing.

17      I don't know the date of sentencing, sir; but that will be

18  communicated to you by your attorney.  At this time, I'm going

19  to remand you to the custody of the United States Marshal

20  Service.

21      Is there anything else, Mr. Park, that needs to be

22  handled?

23         MR. PARK:  No, Your Honor.  Thank you.

24         THE COURT:  Mr. Joyner?

25         MR. JOYNER:  Nothing by the Government, Your Honor.

1                THE COURT:  Thank you.

2        You may transport him.

3                MR. JOYNER:  Thank you, Your Honor.

4                THE COURT:  Thank you.  Thank you.  We'll be in

5   recess.

6                     (THE HEARING ENDED AT 12:06 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4             I, Rita Davis Young, Federal Official Realtime

5    Court Reporter, in and for the United States District Court for

6    the Northern District of Mississippi, do hereby certify that

7    pursuant to Section 753, Title 28, United States Code that the

8    foregoing is a true and correct transcript of the

9    stenographically reported proceedings held in the

10   above-entitled matter; and that the transcript page format is

11   in conformance with the regulations of the Judicial Conference

12   of the United States.

13

14

15             Dated this 20th day of April, 2016.

16

17

18

19             /s/ Rita Davis Young
               RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
20             Federal Official Court Reporter

21

22

23

24

25